SENTELLE, Circuit Judge,
dissenting:
I respectfully dissent from the majority’s holding that the Omnibus Transportation Employee Testing Act authorizes the FAA to require drug and alcohol testing of employees who perform the enumerated functions “directly or by contract (including by subcontract at any tier).” 2006 Final Rule, 71 Fed.Reg. 1666, 1676, 1677 (Jan. 10, 2006); see Maj. Op. at 165-70. I would therefore grant the petitions and vacate the 2006 Final Rule.
As originally enacted in 1991, the Act provided that the FAA “shall” require drug and alcohol testing of “airmen, crew-members, airport security screening contract personnel, and other air carrier employees responsible for safety-sensitive functions ...” Pub.L. No. 102-143, tit. v, § 3, 105 Stat. 917, 953 (Oct. 28, 1991) (codified at 49 U.S.C. app. 1434; recodi-fied, as amended, at 49 U.S.C. § 45102(a)(1)). To find statutory authority for the Rule, the FAA must argue that employees of subcontractors “at any tier” are “air carrier employees” under the Act. I think it is plain that they are not, and therefore cannot join my colleagues in holding that the Act is ambiguous under Chevron U.S.A, Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).
The question is whether “Congress has directly spoken to the precise question at issue.” Id. at 842, 104 S.Ct. 2778. To my mind, the plain language of the statute forecloses the interpretation urged by the FAA. An employee is “[a] person who works in the service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance.” Blaok’s Law DictioNary 543 (7th ed.1999). This is not the only meaning of the word, but “definitional possibilities” do not alone create ambiguity. See California Indep. Sys. Operator Corp. v. FERC, 372 F.3d 395, 400 (D.C.Cir.2004) (“CAISO ”) (citing Brown v. Gardner, 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994)). Here, we need not canvass all known uses of the word “employee” to know that an employee of a subcontractor performing work for a contractor which in turn has a contract with an air carrier is not, in an ordinary sense, an “air carrier employee.” And the Final Rule does not stop at that — it applies to employees of subcontractors “at any tier.”
The majority argues that because the original Act authorized testing of certain contractors’ employees (namely, “airport security screening contract personnel”), *179 the subsequent phrase and other air carrier employees” may be read to include other contractors’ and subcontractors’ employees. See Maj. Op. at 166-67. Because “employee” is not easily defined to encompass an employee of an air carrier’s contractor’s subcontractor, this is not a natural reading of the statute. Where “the text and reasonable inferences from it give a clear answer against the government ... that ... is ‘the end of the matter.’ ” CAISO, 372 F.3d at 401 (quoting Brown, 513 U.S. at 120, 115 S.Ct. 552). To the extent that statutory context may fairly illuminate the reach of “air carrier employee,” the reasonable inference from the phrase “airport security screening contract personnel” is that where Congress intended the Act to reach non-air carrier employees, it said so explicitly.
The FAA supports its interpretation by asserting that Congress gave it broad authority to prescribe regulations the FAA “finds necessary for safety in air commerce” and to require drug testing “[i]n the interest of aviation safety.” 49 U.S.C. §§ 44701(a)(5); 45102(a)(1). No doubt the Final Rule is intended to promote safety, but Congress’s mandate does not give the FAA carte blanche to pursue that goal. See Michigan v. EPA, 268 F.3d 1075, 1084 (D.C.Cir.2001). The FAA’s authority to require drug testing is defined by statute, and in my view the FAA has exceeded that statutory authority here.